IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| DEVON HEATH HORTON, ) | ) | C/A No. 2:15-cv-01548-RBH-MGB |
| Plaintiff, ) | ) | |
| v. ) | ) | |
| | ) | |
| CAROLYN W. COLVIN, ) | ) | REPORT AND RECOMMENDATION |
| Acting Commissioner of the ) | ) | |
| Social Security Administration, ) | ) | |
| | ) | |
| Defendant. ) | ) | |
| _____ ) | | |

Plaintiff Devon Heath Horton, through counsel, brought this action to obtain judicial review of an unfavorable final administrative decision denying benefits on his January 31, 2012, application for child's insurance benefits ("CIB") under the Social Security Act ("Act"). *See* Section 205(g) of the Act, as amended, 42 U.S.C. Section 405(g). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).

**Procedural History and ALJ's Findings**

The Plaintiff was born November 8, 1988, and alleged onset of disability at the time of birth. (R. 168.) The Plaintiff filed for CIB on January 31, 2012. (*Id*.) The Plaintiff's claims were initially denied and denied on reconsideration. Following a hearing, the Administrative Law Judge (ALJ) denied his claim on February 28, 2014. (R. 23.) The Plaintiff requested the Appeals Council review the ALJ's Decision, but his request was denied. (R. 1.) The ALJ's decision is now the Commissioner's final action for purposes of judicial review. In making the

determination that the Plaintiff is not entitled to benefits, the Commissioner adopted the following findings of the ALJ's Decision:

>   (1)     Born on November 4, 1988, claimant had not attained age 22 as of November 4, 1988, the alleged onset date (20 CFR 404.102 and 404.350(a)(5)).
>
>   (2)     Claimant has not engaged in substantial gainful activity since November 4, 1988, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
>   (3)     Prior to attaining age 22, claimant had the following severe impairments: visual disorders; history of learning disabilities; borderline intellectual functioning; attention deficit hyperactivity disorder; personality disorder with avoidant traits (20 CFR 404.1520(c)).
>
>   (4)     Prior to attaining age 22, claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
>   (5)     After careful consideration of the entire record, I find that, prior to attaining age 22, claimant had the residual functional capacity to perform work at all exertional levels, but with the following nonexertional limitations: simple routine tasks; no required ongoing interaction with the general public; a low stress environment defined as no required piece rate, no rigid inflexible production schedule, no required adaptation to frequent changes at the work site, and no required complex decisionmaking; no tasks that require binocular vision or keen depth perception; no exposure to hazards such as unprotected heights, vibration, and dangerous machinery; no operation of heavy industrial equipment.
>
>   (6)     Claimant has no past relevant work (20 CFR 404.1565).
>
>   (7)     Claimant was born November 4, 1988 and was 0 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
>
>   (8)     Claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416-964).
>
>   (9)     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).
>
>   (10)    Prior to attaining age 22, considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 404.1569, 404.1569(a)).
>
>   (11)    Claimant has not been under a disability, as defined in the Social Security Act at any time prior to September 3, 2010, the date he attained age 22 (20 CFR 404.350(a)(5) and 404.1520(g)).

(R. 10-23.)

## Applicable Law

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A).

To assess if a claimant is entitled to CIB, the Social Security Administration has promulgated specific regulations. In determining if a person is entitled to CIB, the ALJ follows the same five-step sequential analysis as for adult disability references. 20 C.F.R. § 404.1520(a)-(f); *see* 42 U.S.C. §§ 402(d)(1), 423(d)(1); 20 C.F.R. § 404.350. The regulations hold, in pertinent part, that a claimant must be 18 years or older and must have a disability that began before attaining age 22. 20 C.F.R. § 404.350(a)(5).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).  He must make a *prima facie* showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied."  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted). Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

### 1. The ALJ's Consideration of the Plaintiff's Impairments in Combination

The Plaintiff argues that the ALJ did not properly consider the Plaintiff's impairments in combination and how his impairments impacted one another. (Dkt. No. 12 at 11.) It "is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity....[T]he [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989) (citations omitted). Where a claimant has more than one impairment, the ALJ is required to consider the combined effect of these impairments under the statutory and regulatory scheme for making disability determinations and to "'adequately explain his or her evaluation of the combined effects of [the] impairments.'" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 2014 WL 4555249, at *4-5 (4th Cir.2014) (quoting *Walker*, 889 F.2d at 50); *see also Rabon v. Astrue*, No. 4:08-cv-03442-GRA, 2010 WL 923857 (D.S.C. Mar.9, 2010) (requiring remand when the ALJ did not consider severe and nonsevere impairments in combination). The ALJ must consider

the combined effect of the Plaintiff's multiple impairments "throughout the disability determination process." 20 C.F.R. § 404.1523; *see also Fleming v. Barnhart*, 284 F.Supp.2d 256, 270 (D.Md. Sep.5, 2003) ("The ALJ is required to assess the combined effect of a claimant's impairments throughout the five-step analytical process." (citations omitted)).

When read as a whole, if it is clear that the impairments were considered in combination, courts in this district have upheld the ALJ's decision. *See Brown v. Astrue*, No. 0:10-cv-01584-RBH, 2012 WL 3716792, at * 6 (D.S.C. Aug.28, 2012) ("[T]he adequacy requirement of *Walker* is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments."); *Thornsberry v. Astrue*, No. 4:08-4075-HMH, 2010 WL 146483, at *5 (D.S.C. Jan. 12, 2010) (finding "while the ALJ could have been more explicit in stating that his discussion dealt with the combination of [the plaintiff's] impairments, his overall findings adequately evaluate the combined effect of [the plaintiff's] impairments.").

This court finds that the ALJ properly considered the combined effects of the Plaintiff's impairments. The ALJ explicitly stated that he analyzed the effects of the Plaintiff's impairments singularly and in combination. (R. 13, 14.) Consistent with his statement that he analyzed the effects of the Plaintiff's impairments singularly and in combination, the ALJ's findings support that he weighed the combined effects of the Plaintiff's impairments. The ALJ in his Decision emphasized and discussed at length the Plaintiff's school records and graduation from high school. (R. 10-23.) By relying on these records, the ALJ examined what the Plaintiff was actually able to do. "[R]esidual functional capacity is the most [the Plaintiff] can still do despite [her] limitations." *See Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (quoting 20 C.F.R. §§ 404.1545(a)). The ALJ supported his RFC by stating:

> Claimant has a history of cognitive and learning disorders with some resource classes, has a history of ADHD, was diagnosed with personality disorder, has no

> useful vision in the right eye, and has significant left eye impairments. However, claimant's high school records show he functioned adequately in school, passed all classes, demonstrated largely normal academic ability, interacted appropriately, and graduated with a regular diploma with limited resource aid. In addition, Dr. [Walck] observed 20/30 vision in the left eye and assessed only one restriction following examination in 2012 [avoid employment that involved "industrial, heavy machinery operations" (R. 700)], and claimant reported that he drove and had no problems performing household chores due to vision problems in 2011.

(R. 21.) Contrary to the Plaintiff's contention, the above quote is evidence that the ALJ weighed the combination of the Plaintiff's vision difficulties and mental. As noted by the ALJ, the Plaintiff has 20/30 vision in his left eye. The Plaintiff still drives a car and is able to take care of his daily needs. While significant, the Plaintiff's vision impairment was not so extreme as to stop him from doing all work when viewed in combination with his other impairments.

The Plaintiff argues that the ALJ took "a position that is directly contrary to both the spirit and express provision of *Walker*" when he discounted Dr. Noelker's IQ testing of the Plaintiff by finding that the Plaintiff's visual impairments likely lowered the Plaintiff's IQ score. (Dkt. No. 12 at 12.) On January 26, 2000, when the Plaintiff was 12 years old, he underwent testing with Dr. Noelker. The Plaintiff obtained a verbal IQ score of 78, performance score of 60, and full scale sore of 67 (mildly mentally retarded to borderline intellectually deficient range). (R. 303.) Dr. Noelker identified "significant inter-test and intra-test scatter noted both on his language and performance subtests" and "a variety of deficits" that Dr. Noelker attributed to Plaintiff's visual difficulties. (R. 303.) Dr. Noelker diagnosed Plaintiff with borderline intellectual functioning (not mental retardation) and recommended a special education setting for Plaintiff. (R. 303) The ALJ discounted the scores from Dr. Noelker's testing based on Dr. Noelker's report. (R. 13-14.) The ALJ did not substitute his own analysis for discounting Dr. Noelker's testing, but rather noted the concerns originally written by Dr. Noelker himself. The

ALJ determined the Plaintiff's RFC by accounting for his impairments singularly and in combination.

### 2. The ALJ's Credibility Analysis

The Plaintiff argues that the ALJ erred by discounting the Plaintiff's testimony because the ALJ did not support his decision with evidence and that the ALJ failed to show that the Plaintiff has the mental capacity to be deceitful. (Dkt. No. 12 at 16.) "The determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater,* 76 F.3d 585, 594 (4th Cir.1996).

> First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.... It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig*, 76 F.3d at 593, 595. Factors relevant to assessing a claimant's symptoms apart from objective medical evidence include "daily activities;" "[t]he location, duration, frequency, and intensity of…symptoms;" "[p]recipitating and aggravating factors;" "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your…symptoms;" other treatments; and "[o]ther factors concerning your functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3). The court "cannot make credibility determinations," but must "review the ALJ's decisions for substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005).

The ALJ thoroughly and properly analyzed the Plaintiff's credibility under the two step process required by *Craig*. The Plaintiff contends that "there is absolutely nothing to support" the ALJ's discounting of the Plaintiff's credibility. (Dkt. No. 12 at 16.) The Plaintiff ignores the

two-and-a-half, single-spaced pages in the ALJ's Decision solely focused on the Plaintiff's credibility. (R. 16-18.) The ALJ fairly summarized the Plaintiff's testimony.[1] (R. 16.) The ALJ then found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that the Plaintiff's claims "concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible…." (R. 17.)

To support his finding, the ALJ systematically analyzed the Plaintiff's medical and school records. (R. 17-18.) The ALJ discussed the Plaintiff's school records year by year from 2004 through 2008. (R. 17.) The ALJ noted that the records contained yearly progress reports which noted no behavior problems, passing grades, and that the majority of his time at school was spent in a "regular educational environment." (*Id.*) The ALJ cited that in 2008, Plaintiff's senior year, the Plaintiff passed both portions of his graduation test, was in regular classes with some support, and was recommended to graduate with a high school diploma. (*Id.*) The ALJ noted that the Plaintiff's reading, math, and writing were all at a twelfth grade level in 2008. (*Id.*) The Plaintiff was described in his school records as "capable of communicating at a level equal to his peers" and had "appropriate social skills." (R. 17 (citing R. 486-87).) The ALJ concluded that

---

[1] The ALJ summarized the Plaintiff's testimony as follows:

> The claimant stated he graduated from school with a regular diploma, attended USC Sumter for 2 semesters, where he passed only 2 courses in college, can read and write, drives a couple times a week, can bathe and dress himself, prepares simple meals, goes grocery shopping with his uncle, washes dishes, sweeps and mops the floors, needs reminders to take out the garbage, needs reminders to shower at times, and has never worked in a job for pay. Claimant also stated he has difficulty concentrating, is distractible, is legally blind in one eye, has a learning disability, attended resource classess in school, does not have any friends, and stopped taking medication for ADHD in 2009 or 2010.

(R. 16.)

> Contrary to claimant's allegations of disabling mental impairments, the school records [analyzed by the ALJ] reveal claimant was able to function adequately in school, passed all classes, had mostly normal academic ability, interacted appropriately, and graduated with a diploma. Such show claimant was able to perform simple or greater tasks, interact appropriately with others, and function adequately in an environment that was at least somewhat stressful. I also note… claimant's report from 2011 that he could drive a vehicle, write checks and pay bills, count change, prepare simple meals, wash clothes, and use a debit card….

(R. 17-18.) The ALJ cited the expert opinions as to the Plaintiff's abilities as well.[2] (R. 18.) The ALJ discussed the Plaintiff's credibility as to his vision problems concluding that the record that showed the Plaintiff "retained substantial visual ability." (*Id.*) The ALJ's proper two-step analysis of the Plaintiff's credibility is supported by substantial evidence.

### 3. The Supporting Evidence Used by the ALJ

The Plaintiff argues that the ALJ's Decision is not supported by substantial evidence. (Dkt. No. 12 at 17-25.) The Plaintiff specifically disagrees with the ALJ's weighing of the testimony of Mr. Stephen Graham, the Plaintiff's high school diploma, the Plaintiff's school records, Dr. Ritz's testimony, and Dr. Brabham's testimony. (*Id.*) The Fourth Circuit has stated that a court's review for substantial evidence must determine "whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence…." *Durham v. Apfel*, 225 F.3d 653 (4th Cir. 2000) (citing *Milburn Colliery Co. v. Hicks,* 138 F.3d 524, 528 (4th Cir.1998)).

#### a. Testimony of Stephen Graham

The Plaintiff argues that the ALJ erred by "summarily dismiss[ing]" the testimony of Mr. Graham, the Plaintiff's uncle, because the ALJ found that the testimony was inconsistent with the Plaintiff's school records and high school diploma. (Dkt. No. 12 at 18.) Mr. Graham testified

---

[2] The ALJ found that "Drs. Burke and Goots assessed that claimant's mental impairments did not prevent him from performing simple tasks away from the public after reviewing claimant's records." (R. 18.)

that he helped the Plaintiff out, cut the Plaintiff's grass, and gave the Plaintiff reminders on hygiene. (R. 20.) Federal courts may not make credibility determination, but are limited to determining if the ALJ's credibility assessment is supported by substantial evidence. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005)

The ALJ found that Mr. Graham's testimony was inconsistent with the Plaintiff's school records and medical evidence. (R. 20.) The ALJ noted that Mr. Graham reported that the Plaintiff had problems distinguishing fantasy from reality, poor reflexes, and problems with coordination, yet such impairments were not supported by any other evidence in the record. The ALJ noted that Mr. Graham asserted that the Plaintiff quickly lost focus, did not understand appropriate behavior, and could not carry out simple instructions. (*Id.*) The ALJ found this to be inconsistent with the Plaintiff's academic record of graduating from high school, and attending college for two semesters. (*Id.*)

The ALJ's assessment of Mr. Graham's testimony is supported by substantial evidence. As noted by the ALJ, Mr. Graham's testimony was not consistent with the Plaintiff's academic record or the medical evidence. Mr. Graham's testimony was directly at odds with the opinions of the medical experts in this case.[3] The testimony contradicts the Plaintiff's school records and achievement of a regular diploma as well. The Plaintiff's arguments that the high school diploma and school records are not valid evidence are discussed *infra*. The ALJ's credibility assessment of Mr. Graham is supported by substantial evidence.

### b. Plaintiff's High School Diploma

The Plaintiff argues that the ALJ's reliance on the Plaintiff's achievement of a regular high school diploma is improper because "up to 19% of high school graduates are functionally

---

[3] In contrast to Mr. Graham's testimony, Dr. Ritz opined that the Plaintiff was able to follow simple instructions. (R. 248.)

illiterate[4]" and "to make matters worse, Mr. Horton's education fell under the controversial…
'No Child Left Behind' era which…effectively incentivized individual educators and entire
school systems alike to progress and eventually graduate as many students as possible…." (Dkt.
No. 12 at 21.) Neither of the Plaintiff's arguments relate to the Plaintiff's case.  The record does
not contain anything to substantiate that the Plaintiff's diploma was not earned or deserved.  If
the Plaintiff's argument were to be accepted, anyone who graduated from high school between
2001, when the No Child Left Behind Act ("NCLB"), Pub. L. No. 107-10, was passed, and 2015,
when NCLB was replaced with the Every Student Succeeds Act, Pub. L. No. 114-95, would not
have a diploma worthy of proving achievement.  The ALJ's reliance on the Plaintiff's diploma
was reasonable.

### c. Plaintiff's School Records

The Plaintiff argues that the ALJ erred by relying on the Plaintiff's school records
because the records are "of uncertain origin and [their] creators and authors are lost in time" and
that the records were created while NCLB was in force.  The Plaintiff has not provided any
evidence that the school records are not authentic or are otherwise unreliable.  The Plaintiff did
not challenge the authenticity of the school records at any point until the filing of his
Memorandum of Law.  The Plaintiff concedes that "the SSA accommodates the usefulness of
other evidentiary sources, such as school records…." (Dkt. No. 12 at 22.)  School records are
appropriate for consideration by the ALJ. *See Jackson v. Astrue,* 467 F. App'x 214, 218 (4th Cir.
2012) (holding that school records submitted to the appeals council were "new and material"
evidence).  The ALJ properly relied on the Plaintiff's school records.

### d. Dr. Ritz's Report and Opinions

---

[4] The Plaintiff is not illiterate.  To the contrary, the record reflects that the Plaintiff has written novels up to 500 pages. (R. 246.)

The Plaintiff argues that the ALJ gave Dr. Ritz's opinion "significant weight" yet erred by not following Dr. Ritz's evaluation of the Plaintiff's overall condition and capacity for gainful employment. (Dkt. No. 12 at 23.) The Plaintiff specifically argues that Dr. Ritz opined that the Plaintiff "may be able to work an unskilled job such as bagging groceries" but that the ALJ limited the Plaintiff's interactions with the public and does not explain how that would coincide with bagging groceries. (*Id.*)

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545; *see also* 20 C.F.R. § 404.1527. The Commissioner is obligated to weigh medical opinions in light of a broad range of factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. 20 C.F.R. § 404.1527(c)(1)-(5).

Dr. Ritz is a Ph.D and licensed clinical psychologist who performed a psychological evaluation of the Plaintiff on July 12, 2011. (R. 246-49.) Dr. Ritz diagnosed the Plaintiff with attention deficit hyperactivity disorder, inattentive; borderline intellectual functioning; personality disorder, not otherwise specified, avoidant traits; and visual deficit. (R. 249.) Following his examination of the Plaintiff, Dr. Ritz recommended the following:

> As far as capacity to work, he may be able to work in an unskilled type job such as bagging groceries. He would have likely difficult time [sic] remembering anything more than a very simple job responsibilities. He does have some characteristics of avoidant personality disorder, but again would not restrict him to doing math type of job. He handles his money independently, but again gets some pointers from the uncle, but has his own account and according to his account he is able to save some money. He takes care of his personal grooming consistently. He is not consistent about taking care of his household as far as cleaning, but does do some dishes. He is able to avoid physical danger. He now no longer takes medication for the attention deficit disorder and this might be of

> some consequence in a job related setting, although [sic] did not seem to intrude in his capacity to respond to the examiner's questions during this assessment.

(R. 248.)

The ALJ's RFC is **more restrictive** than Dr. Ritz's example of bagging groceries, yet there were still jobs the Plaintiff could perform. The ALJ specifically found that Dr. Ritz's statement that the Plaintiff could perform unskilled work to be "equivocal" and did not accept that specific statement of Dr. Ritz. (R. 19.)

The Plaintiff argues that the ALJ erred by failing to address Dr. Ritz's statement that the Plaintiff stopped taking his ADHD medicine and that could have consequences for his possible employment. (Dkt. No. 12 at 23.) The Plaintiff alleges that the ALJ's failure to address the discontinuation of the ADHD medicine is evidence that the ALJ was "cherry picking." (*Id.*) Like Dr. Ritz's recommendation that the Plaintiff could bag groceries, his statement about discontinuing his ADHD medication "**might** be of some consequence in a job related setting" is equivocal. (R. 248(emphasis added).) Dr. Ritz did not give any explanation as to how not taking the medication "might" affect the Plaintiff's ability to work. To the contrary, Dr. Ritz noted that the Plaintiff's ADHD "did not seem to intrude in his capacity to respond to the examiner's questions during [the] assessment." (*Id.*) The ALJ properly analyzed Dr. Ritz's opinions, and the ALJ's Decision is supported by substantial evidence.

### e. Dr. Brabham's Report and Opinions

The Plaintiff argues that the ALJ erred by deciding to "overlook" Dr. Brabham's opinion. The ALJ gave Dr. Brabham's opinion the "least weight." (R. 19.) Dr. Brabham found that the Plaintiff had an IQ of 68, met the requirements of Listing 12.05, and would never be able to have fulltime employment. (R. 714-28.) The ALJ noted the Dr. Brabham's findings were inconsistent

with the findings of Dr. Noelker[5], Mr. Hazzard[6], Dr. Ritz, Dr. Burke, and Dr. Goots. [7] (R. 19.)

The ALJ further found Dr. Brabham's opinion was inconsistent with the record in that the Plaintiff had passed all his classes, graduated from high school, and interacted appropriately. (*Id.*)  The ALJ noted that Dr. Brabham examined the Plaintiff in 2013, yet the Plaintiff turned 22 in November of 2010. (R. 20.)  The ALJ noted that Dr. Brabham's opinion was "purchased by the claimant's representative expressly to bolster claimant's disability claim…." (*Id.*)

The ALJ reasonably explained why he gave the least weight to Dr. Brabham's opinion. The ALJ repeatedly cited to the record to support why he found Dr. Brabham's opinions to not be credible.  While "purchased" may not be an appropriate word for the ALJ to use in describing Dr. Brabham's opinion, the ALJ sufficiently explained why he discounted Dr. Brabham's opinions because of their inconsistency with the record as a whole.  The weight given to Brabham's opinions is supported by substantial evidence.

### 4. Listing Analysis under 12.05

The Plaintiff argues that the ALJ erred by finding that the Plaintiff did not meet or equal Listing 12.05C. (Dkt. No. 12 at 25.)  The Fourth Circuit has stated:

> Listing 12.05 requires a showing of "deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22." Listing 12.05 also requires the

---

[5] Robert W. Noelker, PhD., was a licensed clinical psychologist that examined the Plaintiff on December 27, 1999, and January 5, 2000, when the Plaintiff was 11 years old. (R. 301.) Dr. Noelker diagnosed the Plaintiff with borderline intellectual functioning based on a verbal IQ of 78, a performance IQ of 60, and a full scale IQ of 67. (R. 303.)  Dr. Noelker noted "significant inter-test and intra-test scatter" in the Plaintiff's IQ test with the Plaintiff "missing easy items, but later passing more difficult ones." (*Id.*)

[6] Hap Hazard, Ed.S, was a School Psychologist II that evaluated the Plaintiff on April 24, 1996. (R. 307.) Mr. Hazard diagnosed the Plaintiff being within the "borderline range of ability" based on a verbal IQ of 82, a performance IQ of 73, and a full scale IQ of 76. (R. 308.)

[7] Both Leslie Burke, PhD., and Samuel Goots, Ph.D., are state agency psychological consultants that conducted assessments of the Plaintiff. (R. 86-87; 101-104.)  Both found that the Plaintiff's impairments did not meet or equal a Listing. Both found that the Plaintiff had Borderline Intellectual Functioning.

>satisfaction of one of four additional requirements identified as Requirements A–D. At issue in this case was Requirement C, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70," as well as "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

*Jackson*, 467 F. App'x at 217 (quoting 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.05) (internal citations omitted). The Plaintiff asserts that the Plaintiff meets the two specific prongs of Requirement C. (Dkt. No. 12 at 26.) The Commissioner argues that the Plaintiff fails to recognize the first requirement to meet or equal Listing 12.05, which requires a showing of "deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.05.

Substantial evidence supports the ALJ's finding that the Plaintiff did not meet or equal Listing 12.05. As stated by the Fourth Circuit in *Jackson*, the Plaintiff must first show that he has "deficits in adaptive functioning initially manifested during the developmental period…." 467 F. App'x at 217. The ALJ noted that the Plaintiff's school records showed the Plaintiff "functioned adequately, had largely normal academic ability, passed all classes, interacted and behaved appropriately, and graduated with a diploma." (R. 14.) The ALJ additionally found that the Plaintiff suffered from borderline intellectual functioning, not intellectual disability or mental retardation, based on the reports of Dr. Noelker, Mr. Hazzard, Dr. Ritz, Dr. Burke, and Dr. Goots.[8] (*Id.*) This court finds that the ALJ's determination that the Plaintiff did not meet Listing 12.05C is supported by substantial evidence.

### 5. ALJ's Determination that Jobs Existed in the National Economy

---

[8] The Fourth Circuit has held that an ALJ may weigh conflicting IQ test results and has the discretion to assess the validity of an IQ test. *Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012). The ALJ may entirely reject an IQ test when other evidence exists contradicting the result. *Id.*

The Plaintiff argues that the ALJ erred by concluding that there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform. (Dkt. No. 12 at 26.) When there is an apparent conflict between the VE's testimony and the DOT, the ALJ, as adjudicator of the facts, must resolve the conflict.  SSR 00-4P, 2000 WL 1898704 *1.

> [O]ur adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and Explain in the determination or decision how any conflict that has been identified was resolved.

*Id.* at 1.  The Fourth Circuit has held that SSR 00–4p does not require an ALJ to uncover conflicts between the VE's testimony and DOT evidence, but rather requires the ALJ to inquire only if apparent conflicts exist between a VE's testimony and the DOT and to resolve such discrepancies. *See Justin v. Massanari,* 20 F. App'x 158, 160 (4th Cir.2001); *Fisher v. Barnhart,* 181 F. App'x 359, 365 (4th Cir.2006). "The question, then, is whether there was a conflict between the VE's testimony and the DOT that was so apparent that the ALJ should have picked up on it without any assistance." *Acevedo ex rel. Acevedo v. Colvin,* No. 0:12-cv-2137-TMC, 2014 WL 197738, at *5 (D.S.C. Jan. 16, 2014).

In the case at bar, the ALJ instructed the VE as follows at the onset of his questioning:

> If at any time during your testimony, your testimony should differ from the Dictionary of Occupational Titles and allied publications, please alert us to that fact and give the basis for your opinion.  Otherwise, I will assume that your testimony is entirely consistent with the DOT and allied publications.

(R. 63.)

The Plaintiff's attorney agreed with the ALJ's instruction. (*Id.*)  The VE testified that the Plaintiff would be able to perform the requirements of a machine cleaner and a landscape worker. (R. 62-65.) At no time during the VE's testimony did any apparent conflicts arise. (R.

62-66.) The Plaintiff's attorney questioned the VE and did not ask about any discrepancies. (*Id.*) The ALJ fulfilled his affirmative duty by instructing the VE to inform him of any apparent conflicts. No apparent conflicts existed. The alleged conflicts now raised by the Plaintiff were not readily apparent from any evidence in the record or hearing testimony.[9] The ALJ found the VE's testimony was consistent with the Dictionary of Occupational Titles. (R. 22.) This court finds that the ALJ did not err by relying on the VE's testimony.

## Recommendation

Wherefore, based upon the foregoing, the court recommends that the Commissioner's decision be **AFFIRMED**,

IT IS SO RECOMMENDED.

July 26, 2016

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[9] The Plaintiff alleges that the job of machine cleaner requires the disassembling of machines and use of power tools, which are beyond the Plaintiff's RFC as decided by the ALJ. (Dkt. No. 12 at 28.) Similarly, the Plaintiff alleges that the job of landscape laborer requires the use of power mowers, which would conflict with the Plaintiff's RFC as decided by the ALJ. (*Id.* at 27.) The court does not reach if a conflict exists between the DOT and the VE's testimony because there was no apparent conflict before the ALJ.