UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Devon Heath Horton, | ) | Civil Action No.: 2:15-cv-01548-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Devon Heath Horton seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for child's insurance benefits (CIB) under the Social Security Act (the Act). The matter is before the Court for consideration of Plaintiff's objections to the Report and Recommendation (R & R) of United States Magistrate Judge Mary Gordon Baker, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a) for the District of South Carolina. *See* R & R, ECF No. 19; Pl.'s Objs., ECF No. 22. The Magistrate Judge recommends the Court affirm the Commissioner's decision. R & R at 18.

**Background**

Plaintiff applied for CIB on January 31, 2012, alleging disability as of his date of birth, November 4, 1988.[1] *See* Administrative Transcript (Tr.) [ECF No. 8] at 10, 35, 168-74. The

---

[1] Although Plaintiff alleged his birth date as the onset date of disability, he only became eligible for CIB when he attained the age of eighteen. *See* 20 C.F.R. § 404.350(a)(5); *see, e.g.*, *Hamiter v. Colvin*, No. 2:14-cv-03464-RBH-MGB, 2016 WL 536626, at *3 (D.S.C. Jan. 20, 2016) (stating the relevant period for the plaintiff's CIB claim was from ages 18-22), *R & R adopted*, No. 2:14-cv-03464-RBH, 2016 WL 524255 (D.S.C. Feb. 10, 2016). Thus, as the ALJ recognized, the period of alleged disability relevant to the Court's analysis is November 4, 2006 (the date Plaintiff turned eighteen) through November 4, 2010 (the date Plaintiff turned twenty-two). *See* Tr. at 10.

Commissioner denied Plaintiff's application initially and on reconsideration, so he requested a hearing before an administrative law judge (ALJ). Tr. at 112-16, 119, 126-27. The ALJ held a hearing on December 10, 2013, and he heard testimony from Plaintiff,[2] Plaintiff's uncle, and a vocational expert. Tr. at 29-67. The ALJ issued an unfavorable decision on February 28, 2014, finding Plaintiff was not disabled. Tr. at 7-28. The ALJ made the following findings:

1. Born on November 4, 1988, claimant had not attained age 22 as of November 4, 1988, the alleged onset date (20 CFR 404.102 and 404.350(a)(5)).

2. Claimant has not engaged in substantial gainful activity since November 4, 1988, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. Prior to attaining age 22, claimant had the following severe impairments: visual disorders, history of learning disabilities, borderline intellectual functioning; attention deficit hyperactivity disorder; personality disorder with avoidant traits (20 CFR 404.1520(c)).

4. Prior to attaining age 22, claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, prior to attaining age 22, claimant had the residual functional capacity to perform work at all exertional levels, but with the following nonexertional limitations: simple, routine tasks; no required ongoing interaction with the general public; a low stress environment defined as no required piece rate, no rigid inflexible production schedule, no required adaptation to frequent changes at the work site, and no required complex decisionmaking; no tasks that require binocular vision or keen depth perception; no exposure to hazards such as unprotected heights, vibration, and dangerous machinery; no operation of

---

[2] Plaintiff was represented by an attorney at the hearing. Tr. at 29.

        heavy industrial equipment.

6. Claimant has no past relevant work (20 CFR 404.1565).

7. Claimant was born on November 4, 1988 and was 0 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. Claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue because claimant does not have past relevant work (20 CFR 404.1568).

10. Prior to attaining age 22, considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. Claimant has not been under a disability, as defined in the Social Security Act, at any time prior to November 3, 2010, the date he attained age 22 (20 CFR 404.350(a)(5) and 404.1520(g)).

Tr. at 12-22. The ALJ's findings became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for further review on February 5, 2015. Tr. 1-6.

     Plaintiff filed the instant action on April 8, 2015, seeking judicial review of the Commissioner's decision. ECF No. 1. Both Plaintiff and the Commissioner filed briefs, and the Magistrate Judge issued an R & R on July 26, 2016, recommending that the Court affirm the Commissioner's decision. ECF Nos. 12, 13, 16, 18, & 19. Plaintiff filed timely objections to the R & R on August 18, 2016. ECF No. 22 (Pl.'s Objs.). Defendant filed a timely reply to Plaintiff's objections on September 1, 2016. ECF No. 24.

## **Legal Standards**

I.      **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

II.     **The Court's Review of the Magistrate Judge's R & R**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination

remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

### III. Determination of Disability

Under the Act, Plaintiff's eligibility for the benefits she is seeking hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a), 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1), 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §§ 404.1520 and 416.920, it must be determined (1) whether the claimant currently has gainful employment, (2) whether she suffers from a severe physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are met, the impairment prevents her from returning to previous work, and (5) whether the impairment prevents her from performing some other available work.

CIB is limited to claimants that are eighteen years old or older and have a disability within the meaning of the Social Security Act that began before attaining age twenty-two. 20 C.F.R. § 404.350. In making such a determination, the ALJ follows the same five-step sequential analysis as for adult disability references. 20 C.F.R. § 404.1520(a)-(f); *see* 42 U.S.C. §§ 402(d)(1), 423(d)(1); 20 C.F.R.

6

§ 404.350.

## Discussion

The Magistrate Judge recommends affirming the ALJ's decision on all issues raised by Plaintiff. R & R at 5-18. Plaintiff lodges four main objections to the Magistrate Judge's recommendation, arguing the ALJ erred by (1) not properly considering Plaintiff's impairments in combination and how his impairments impacted one another; (2) failing to properly evaluate Plaintiff's credibility and not according proper weight to the testimony of his uncle (Stephen Graham) and medical opinions of a treating psychologist (Dr. Brabham); (3) not finding Plaintiff met or equaled Listing 12.05C, the listing for intellectual disability; and (4) failing to resolve a conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles*, and failing to resolve the resulting inconsistency between the vocational expert's testimony and the residual functional capacity as determined by the ALJ. *See* Pl.'s Objs. at 1-9. For the following reasons, the Court concludes remand is necessary as to Plaintiff's fourth issue concerning the vocational expert's testimony.

As noted above, the ALJ uses a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920. At the fifth step, "the ALJ considers the claimant's age, education, work experience, ***and residual functional capacity***[3] to decide whether he can perform alternative work that exists in significant numbers in the national economy." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (emphasis added) (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)). "The claimant has the burden of proof for the first four steps, but at the final, fifth step the Commissioner bears the burden to

---

[3] Residual functional capacity (RFC) is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

prove that the claimant is able to perform alternative work." *Id.* In determining whether sufficient other work exists for the claimant in the national economy, the ALJ "rel[ies] primarily" on the *Dictionary of Occupational Titles* (DOT) and its companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO).[4] Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). "The ALJ 'may also use' a vocational expert to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Pearson*, 810 F.3d at 207 (quoting SSR 00-4p). Because the vocational expert's testimony can sometimes conflict with the DOT and the SCO, the Commissioner has promulgated Social Security Ruling 00-4p, which "clarifies [the] standards for the use of vocational experts . . . who provide evidence at hearings before administrative law judges." SSR 00-4p, 2000 WL 1898704, at *1.

During the administrative hearing, the ALJ heard testimony from Dr. Thomas C. Neil, a vocational expert (VE), and instructed him as follows at the beginning of his testimony: "If at any time during your testimony, your testimony should differ from the *Dictionary of Occupational Titles* and allied publications, please alert us to that fact and give us the basis for your opinion. Otherwise, I will assume that your testimony is entirely consistent with the DOT and allied publications." Tr. at 62. The ALJ then presented the VE with several hypotheticals and asked whether there existed any jobs in the economy for a hypothetical individual of Plaintiff's age, education, work history, and subject to the same RFC. Tr. at 63-64. The VE identified the jobs of machine cleaner and landscape worker. Tr. at 64. The VE did not mention any conflicts between his testimony and the DOT or SCO, and the ALJ

---

[4] The DOT and SCO "are Social Security Administration resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations." *Pearson*, 810 F.3d at 205 n.1.

did not ask the VE about any discrepancies.

In his decision denying benefits, the ALJ found Plaintiff has the following severe impairments: "visual disorders, history of learning disabilities, borderline intellectual functioning; attention deficit hyperactivity disorder; [and] personality disorder with avoidant traits." Tr. at 12. The ALJ then determined Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that, prior to attaining age 22, claimant had the residual functional capacity to perform work at all exertional levels, but with the following nonexertional limitations: simple, routine tasks; no required ongoing interaction with the general public; a low stress environment defined as no required piece rate, no rigid inflexible production schedule, no required adaptation to frequent changes at the work site, and no required complex decisionmaking; ***no tasks that require binocular vision or keen depth perception; no exposure to hazards such as unprotected heights, vibration, and dangerous machinery***; no operation of heavy industrial equipment.[5]

Tr. at 15 (emphasis added). Thereafter, the ALJ found that although Plaintiff had no past relevant work, he could perform jobs that exist in significant numbers in the national economy, namely as a machine cleaner (DOT # 699.687-014) and a landscape worker (DOT # 406.687-010),[6] the same two jobs the VE identified. Tr. at 21-22. The ALJ further stated, "Pursuant to SSR 00-4p, I have determined that the [VE]'s testimony is consistent with the information contained in the Dictionary of Occupational Titles." Tr. at 22. The ALJ concluded Plaintiff was not disabled and not entitled to CIB. *Id.*

Plaintiff argues that the ALJ failed to resolve conflicts between the VE's testimony and the DOT/SCO, and that the VE's testimony concerning the existence of jobs that Plaintiff could perform

---

[5] This RFC assessment mirrored that of the individual in the hypotheticals presented to the VE at the hearing. *See* Tr. at 63-64.

[6] The title in DOT # 406.687-010—the DOT number cited by both the VE and the ALJ—is actually "landscape *specialist*." *See* 1991 WL 673342.

9

was not consistent with the RFC assigned by the ALJ. Pl.'s Objs. at 8-9; *see also* Pl.'s Brief, ECF No. 12 at 26-28. The Court agrees.

As Plaintiff notes in his objections, Social Security Ruling 00-4p provides as follows:

The Responsibility To Ask About Conflicts

When a VE or VS [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will: [a]sk the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and [i]f the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Explaining the Resolution

When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 2000 WL 1898704, at *4; *see also id.* at *2 ("Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.").

In the recent decision of *Pearson v. Colvin*,[7] the United States Court of Appeals for the Fourth Circuit interpreted SSR 00-4p as placing an "affirmative duty" on the ALJ to independently identify apparent conflicts that exist between the VE's testimony and the DOT/SCO[8] regarding jobs a claimant

---

[7] Neither the parties nor the Magistrate Judge cite or otherwise account for *Pearson*.

[8] In *Pearson*, the Fourth Circuit used "the *Dictionary*" to refer to both the DOT and the SCO. 810 F.3d at 205 n.1.

may perform based upon a hypothetical. 810 F.3d 204, 209 (4th Cir. 2015). The "apparent" conflict standard falls between the extremes of requiring the ALJ to resolve only obvious conflicts or to resolve all possible conflicts. *Id.* In short, an ALJ must independently identify apparent conflicts by comparing the express language of the DOT/SCO to the VE's testimony, and if there "seems to" be a conflict, the ALJ must obtain a reasonable explanation for the conflict before he can rely on the VE's testimony to support the decision regarding disability. *Id.* at 209-10. "An ALJ has not fully developed the record if it contains an unresolved conflict between the expert's testimony and the *Dictionary*. Nor has the ALJ fulfilled this duty if he ignores an apparent conflict because the expert testified that no conflict existed." *Id.* at 210. Significantly, a claimant is not required to raise the conflict at the hearing (which "is not an adversarial one") because Social Security Ruling 00-4p places the burden of identifying and resolving the conflict upon the ALJ. *Id.*

The Fourth Circuit in *Pearson* determined remand was appropriate due to the ALJ's failure to resolve a conflict between the hypothetical RFC that disallowed "overhead reaching" and the VE's recommendation of three jobs that, according to the DOT, all required "frequent reaching." *Id.* at 210-11. The Fourth Circuit found that even though the claimant could possibly perform some of the proposed job functions listed in the DOT, reviewing courts are not to "guess what these occupations require in reality" because it is the responsibility of the ALJ to elicit an explanation from the VE and resolve such conflicts. *Id.* at 211. *See also Henderson v. Colvin*, 643 F. App'x 273, 276-78 (4th Cir. 2016) (applying *Pearson*); *Rholetter v. Colvin*, 639 F. App'x 935, 938 (4th Cir. 2016) (same).

In the instant case, the VE testified, and the ALJ found, that Plaintiff could perform work as a machine cleaner (DOT # 699.687-014) and a landscape worker (DOT # 406.687-010). Tr. at 22, 64. The DOT defines a machine cleaner's job tasks as follows:

> Cleans dust, dirt, grease, and lint from machines and auxiliary equipment, such as tanks and pipelines, in industrial plant or aboard ship, using cleaning solutions, waste, rags, waterhose, pumps, lint vacuum system, airhose, brushes, and scraping tools: Cleans screen on lint vacuum system and replaces worn screen. May clean plant sewage treatment system and water supply wells. May remove machine guards and accessories, using handtools. May paint exposed surfaces of machines to prevent rust. May oil moving parts or wearing surfaces. May clean floors around machine, using broom or vacuum cleaner.

DOT # 699.687-014, 1991 WL 678873. The SCO lists frequent near acuity as a physical demand factor of a machine cleaner. SCO at 319.

The DOT defines a landscape specialist's job tasks as follows:

> Maintains grounds and areas along highway right-of-way of city, state, and national parks: Sows grass seed, using spreader, or plants trees, shrubs, or flowers, according to instructions and planned design of landscaped area, using handtools. Applies herbicide or mulch to designated areas, using sprayers. Grubs and weeds around bushes, trees, and flower beds. Trims hedges and prunes trees, using handtools. Mows lawns, using hand mower or power-driven lawnmower. Picks up and burns or carts away paper and rubbish. Repairs and paints benches, tables, and guardrails, and assists in repair of roads, walks, buildings, and mechanical equipment, using handtools.

DOT # 406.687-010, 1991 WL 673342. Additionally, as Plaintiff points out, the SCO lists occasional depth perception, near acuity, and far acuity as physical demand factors of a landscape specialist.[9] SCO at 40; *see* Pl.'s Brief, ECF No. 12 at 26-28.

A review of the record indicates apparent conflicts seem to exist between the VE's testimony and the DOT/SCO. The ALJ neither identified nor resolved these conflicts as required by Social

---

[9] The SCO defines near acuity as "clarity of vision at 20 inches or less"; far acuity as "clarity of vision at 20 feet or more"; and depth perception as "three-dimensional vision." App. C, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* C-4.

Security Ruling 00-4p and *Pearson*. Many of the tasks required of a machine cleaner and a landscape specialist are inconsistent with the RFC that the ALJ assigned to Plaintiff. The ALJ gave the VE a hypothetical (based on Plaintiff's RFC) that limited Plaintiff to simple routine tasks that do not "require binocular vision or keen depth perception" and that do not "require exposure to . . . vibration [or] dangerous machinery," and the VE testified Plaintiff could perform the jobs of machine cleaner and landscape worker. Besides requiring frequent near acuity, the job of machine cleaner (according to the DOT and SCO) could seemingly expose Plaintiff to dangerous machinery. *See* DOT # 699.687-014; SCO at 319. The job of landscape specialist (according to the DOT and SCO) could seemingly expose Plaintiff to vibrations and dangerous machinery (such as a "power-driven lawnmower") and would require occasional depth perception, near acuity, and far acuity. *See* DOT # 406.687-010; SCO at 40. Given his RFC, Plaintiff would appear to be physically and/or mentally incapable of performing many of these tasks. These job descriptions "seem to" conflict with the ALJ's RFC determination and, consequently, the VE's testimony given in response to the ALJ's hypothetical based on the RFC determination. *See Pearson*, 810 F.3d at 209 ("[T]he context of the word 'apparent' in SSR 00-4p makes plain that . . . the ALJ must identify where the expert's testimony seems to, but does not necessarily, conflict with the *Dictionary*."). Consequently, the ALJ was required to identify these apparent conflicts and then question the VE as to whether such conflicts would preclude Plaintiff from performing the work required of a machine cleaner or landscape specialist.[10] Even if Plaintiff is able to perform some, but not all, of the duties required for either job, the ALJ still must elicit an explanation

---

[10] In the R & R, the Magistrate Judge relied on the fact that Plaintiff's attorney did not raise a conflict at the hearing. R & R at 17-18. However, "SSR 00-4p 'requires nothing of the claimant,' so [Plaintiff]'s failure to raise the conflict at the hearing does not preclude a finding that an apparent conflict exists." *Rholetter*, 639 F. App'x at 938 (quoting *Pearson*, 810 F.3d at 210-11).

13

from the VE regarding the number of positions in the national economy without those requirements. *See id.* at 211. The Court finds the ALJ failed to identify and resolve apparent conflicts between the VE's testimony and the DOT/SCO, and failed to resolve the resulting inconsistency between the VE's testimony and the RFC. Under *Pearson*, the VE's testimony did not provide substantial evidence that there were jobs that Plaintiff could perform given his RFC, and therefore this matter must be remanded for further proceedings.[11]

### Conclusion

The Court has thoroughly considered the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections, the Commissioner's reply, and the applicable law. For the above reasons, the Court respectfully **REJECTS** the Magistrate Judge's recommendation [ECF No. 19] to affirm the Commissioner's decision. The Court **REVERSES** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDS** the case to the Commissioner for further proceedings. On remand, the ALJ is directed to independently identify and resolve any apparent conflicts between the VE's testimony and the DOT/SCO, obtain any necessary further vocational expert testimony, and issue a new decision consistent with Social Security Ruling 00-4p and the Fourth Circuit's holdings in *Pearson*.

    **IT IS SO ORDERED.**

Florence, South Carolina  
September 13, 2016

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge

---

[11] Having found remand necessary due to unresolved conflicts between the VE's testimony and the DOT/SCO, the Court does not reach the other arguments raised in Plaintiff's objections. However, on remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.